**UNITED STATES of America, Plaintiff,**

**v.**

**Jesse Victor JACKSON, also known as Jesse McWhartor, Defendant.**

**Crim. No. 41713.**

United States District Court
N. D. California.

Nov. 13, 1969.

James F. Hewitt, San Francisco, Cal., for defendant.

Cecil F. Poole, U. S. Atty., John G. Milano, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

## ORDER FOR DISCHARGE OF DEFENDANT

ZIRPOLI, District Judge.

Jesse Victor Jackson was indicted on November 29, 1967 for armed bank robbery alleged to have taken place in San Francisco on November 17, 1967. Defendant Jackson, alias Jesse McWhartor, was soon thereafter arrested and confined in the Medical Center for Federal Prisoners at Springfield, Missouri. After a mental examination and a hearing on mental competency held on March 5, 1968, the court found defendant to be mentally incompetent to stand trial.

From March 1968 until September 1969 defendant was confined at the Medical Center in Springfield, Missouri. On August 8, 1969, the Director of that Center stated that Mr. Jackson was competent to stand trial. Pursuant to an order directing a further competency hearing he was returned to San Francisco where he has been confined in the County Jail since September 30, 1969.

Pursuant to an order directing a psychiatric examination, Dr. Rapaport examined the defendant, finding that he is actively mentally ill, does not understand the nature of the charge against him and is mentally incompetent to confer with or assist counsel. This court, after reviewing all relevant evidence, concludes that petitioner Jackson is mentally incompetent to stand trial; that his mental illness is not transitory; and that it is not likely to be cured in the foreseeable future.

The court must deal with this situation within the context of the federal statutes covering mental defectives. 18 U.S.C. §§ 4244–4248. After the court has determined that the person charged is mentally incompetent pursuant to sec. 4244, it is then referred to sec. 4246 which allows for commitment to the custody of the Attorney General until the accused is mentally competent to stand trial or until the charges against him are disposed of according to law. The constitutional problems raised by this section are apparent from the face of the statute. There are no standards for termination of the custody. Also, there is no provision for medical treatment of the accused, who after all is being held in custody because of his mental illness.

In 1956 the Supreme Court held statutes 18 U.S.C. §§ 4244–4248 constitutional. Greenwood v. United States, 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956). However, the Court did not discuss the question of speedy trial, presumption of innocence, or cruel and unusual punishment. As the Court stated: "We decide no more than the situation before us presents and equally do not

**6**

imply an opinion on situations not now before us." *Id.*, at 376, 76 S.Ct. at 415.

 Since the decision in *Greenwood* new developments have taken place in the field of mental illness, crime and the judicial response. See, Note, Incompetency to Stand Trial, 81 Harv.Law Rev. 454 (1967). Symbolic of much of the new thinking is Robinson v. State of California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1966). In that case a California statute treated as criminal one whose status was that of a narcotic addict. The Court held that since addiction was an illness, a law which imprisons a person thus afflicted as a criminal inflicts cruel and unusual punishment. Mental incompetence is also an illness, and therefore the government cannot treat one thus afflicted as a criminal. (*Id.*, at 666, 82 S.Ct. 1417). Nor can the government confine a person who has not been judged guilty of any crime in a facility similar to a prison where he will not receive true medical treatment. Easter v. Dist. of Columbia, 124 U.S. App.D.C. 33, 361 F.2d 50 (1966); See, Ragsdale v. Overholser, 108 U.S.App.D.C. 308, 281 F.2d 943 (1960). Mandatory commitment, absent treatment lays bare sec. 4246 to seemingly incurable constitutional infirmities. See Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F.2d 451 (1966), Darnell v. Cameron, 121 U.S.App.D.C. 58, 348 F.2d 64 (1965).

Given these constitutional problems of speedy trial, presumption of innocence, due process, and cruel and unusual punishment the courts have attempted to read a rule of reason into secs. 4244 and 4246. This rule states that commitment under these sections is "a temporary one" and petitioner cannot be held for an "unreasonable indefinite period of time." Royal v. Settle, 192 F.Supp. 176, 178 (W.D.Missouri 1959). See Martin v. Settle, 192 F.Supp. 156 (W.D.Missouri 1961). Given such an interpretation of the statutes they may be constitutional. This court does not at this time have to decide that question, for in the case before it petitioner has already spent over a year and one-half confined

in Springfield, Missouri and is still mentally incompetent. Given the prognosis of long-term future incompetence and the failure of Congress to provide for federal civil commitment, this court faces the tragic scene of a seriously mentally ill person accused of a crime but unable to defend against the charge, and no federal facility available in which he can receive medical, not penal treatment.

 *This situation combined with the failure to provide a place for the petitioner, a veteran, at a Veterans' Hospital leaves this court with no alternative but to honor the constitutional mandate that a person is guaranteed a speedy trial,* see, Klopfer v. North Carolina, 386 U.S. 213, 222–226, 87 S.Ct. 988, 18 L. Ed.2d 1 (1967); Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957), and that a person suffering an illness cannot, consistent with the Constitution, be confined as a criminal without medical treatment. See Rouse v. Cameron, *supra*; *Cf.* Robinson v. California, *supra*.

The court has before it a number of papers filed by the petitioner which it will treat as a petition for discharge from custody. See Greenwood v. United States, *supra*; Arco v. Ciccone, 252 F. Supp. 347 (W.D.Missouri 1965).

 Since there is no federal provision for civil commitment this court cannot direct petitioner's further confinement. Consequently, the petitioner is discharged from federal custody.

The basic purpose of pretrial commitment is to protect the due process right of an accused to assist his attorney and to be mentally as well as physically present in the courtroom. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L. Ed.2d 815 (1966). When, as in this case, there is no likelihood of mental competence in the foreseeable future the federal responsibility for the accused should transfer to the state which has more appropriate facilities for the long-term care of the petitioner. See Kirkwood v.

Harris, 229 F.Supp. 904 (W.D.Missouri 1964); 18 U.S.C. § 4248.

Therefore at this point the responsibility for a seriously ill and possibly dangerous person shifts to the State of California. The psychiatric evidence indicates this man is a danger to himself and probably to the community as well. The responsibility is then a serious one, and this court would hope the State undertakes that responsibility. It is incumbent upon the federal officials involved in this case to direct the State's attention to the situation presented here and to make them aware of the need for the appropriate civil commitment.

Because of the imperative and continuing need of Mr. Jackson for medical care and attention and because his immediate release may present a danger to himself and possibly to the public and also because the United States may elect to appeal from this order, subject to the further order of the court, the effective date of this order is stayed for a period of ten (10) days from the date hereof.