**UNITED STATES of America, Plaintiff,**

v.

**Michael James WALKER, Defendant.**

**No. Cr. 70 39.**

United States District Court, N. D. California.

Sept. 30, 1971.

Asst. U. S. Atty. Paul J. Fitzpatrick, San Francisco, Cal., for plaintiff.

Federal Public Defender James F. Hewitt, and George T. Davis, San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

This case demonstrates in the strongest terms the glaring need for federal legislation in regard to long-term detention for treatment of mentally incompetent defendants. As the situation exists at present, federal courts face a painful

dilemma: either to confine the accused in flagrant violation of certain due process rights, or to release from custody an individual dangerous both to himself and to the community. Federal legislation allowing for long-term treatment of an incompetent could provide a successful resolution to the problem, but such legislation has not been forthcoming. In the instant case the dilemma is aggravated by the reluctance of the State of California, which does provide for long-term civil commitment, to charge the accused and thus trigger the relevant state provisions.[1]

I

On January 14, 1970 an indictment was returned charging the defendant, Michael James Walker, with robbing a San Francisco bank on November 3, 1969, in violation of Title 18 U.S.C. § 2113(a). In order to place this case, CR–70–39, in the proper perspective, a recital of the recent history of this defendant is necessary.

On December 18, 1968 Walker was indicted for a different bank robbery that occurred on December 3, 1968 in San Francisco, California. See CR–42520, N.D.Cal. He was apprehended in Seattle, Washington on December 5, 1968 on the basis of an arrest warrant issued by this court in the Western District of Washington. At that time he was examined by a jail psychiatrist, Dr. Alexander Grinstein, who believed that Walker was "in need of psychiatric consultation" and exhibited "paranoid trends."

Walker was returned to this district and was arraigned on the indictment on January 21, 1969. Counsel was appointed and on January 29, 1969 Judge Wollenberg ordered a mental examination for Walker under 18 U.S.C. § 4244 to determine the defendant's mental competency to assist counsel in his defense. Walker was examined by Dr. Louis Constine on February 3, 1969, and in his re-

port dated February 5, 1969 Dr. Constine expressed the opinion that Walker was "incompetent, psychotic and in need of hospitalization." Based upon this examination, Judge Wollenberg stated that Walker "was in need of hospitalization for mental illness" and ordered Walker to San Francisco City and County Hospital on February 13, 1969 for examination and commitment to a state hospital. On March 7, 1969 Walker was committed to Napa State Hospital by the Superior Court for the State of California under then existing law as a mentally ill person in need of treatment.

Subsequently at some point in March, 1969 Walker "did escape or leave said facilities without being discharged." (Order of Chief Judge Carter, U.S. District Judge, May 29, 1969). For the sake of clarity it should be noted that this was his *first* escape from Napa State Hospital. During this period of escape Walker allegedly robbed a bank in San Francisco on May 23, 1969; a complaint was issued but no indictment was returned. He was apprehended and appeared before the United States District Court on May 29, 1969. In light of Walker's recent history the court ordered Walker committed to the Federal Medical Center in Springfield, Missouri for examination under Section 4244. A report of the psychiatric staff at the Medical Center was made to the court on July 15, 1969; the report suggested that Walker was competent to stand trial. Judge Wollenberg and the United States Attorney apparently disagreed with this staff report, for on August 8, 1969 the court ordered Walker returned to Napa State Hospital to continue his treatment program.

In view of the above disposition, the indictment was dismissed on September 15, 1969. Walker remained at Napa State Hospital but on a *voluntary* basis under the California Welfare and Institutions Code.[2] Because the confinement

---

1. Cal.Pen.Code § 4011.6.

2. He could not be confined involuntarily unless charged with a crime; neither the

state nor local officials, however, charged him for either the December 3, 1968 or the May 23, 1969 robbery.

was voluntary, Walker was free to leave at any time. The records of the Napa State Hospital show that Walker was discharged on October 20, 1969 on his own recognizance, just three months after he had been apprehended for his escape from the hospital.

On January 14, 1970 the matter presently before this court was initiated with an indictment issued charging Walker with robbing a San Francisco bank on November 3, 1969. On January 21, 1970 Judge Burke found Walker to be mentally incompetent and ordered him to the custody of the Attorney-General under 18 U.S.C. § 4244. On January 30, 1970 he was again ordered to the Federal Medical Center in Springfield Missouri, approximately six months after his last visit there. He was again found competent to stand trial and was returned to this court for further proceedings. In light of Walker's previous history, this court was somewhat skeptical of the staff report from the medical center and consequently ordered a re-examination on April 28, 1970. Walker was examined by Dr. Vernon Collins at San Francisco General Hospital, and a report was submitted to this court on May 12, 1970. Dr. Collins believed that Walker was unable to cooperate in his own defense, and that for Walker any ability to function in a normal capacity was dependent upon continuous medication. This report further suggested that the defendant's capacity to distinguish right from wrong was doubtful.

On June 11, 1970, in cooperation with the Superior Court of the State of California, this court ordered Walker delivered to Napa State Hospital as a "gravely disabled person" under § 5350 et seq. of the California Welfare and Institutions Code. Under that provision Walker was to be examined and treated for ninety days. The court's order specified that Walker was to be kept in custody as if he were committed under the California Penal Code §§ 1367–1375, with the corresponding security precautions. This was Walker's third visit to Napa State Hospital.

On July 15, 1970 Walker left the institution without authorization, and the hospital informed the court as follows:

This letter is to inform you that Michael Walker left the hospital on unauthorized absence July 15, 1970. The U. S. Marshal in San Francisco has been notified of this fact.

If and when he is apprehended, should you desire to return him to our facility, I cannot guarantee anything more than minimum security. Our maximum security unit has been discontinued and thus we have no facilities at this time for handling anyone who is considered a serious escape risk.

Mr. Walker had been making some progress, and it is my opinion that he still needs psychiatric treatment.

During this absence, according to the files of the U. S. Attorney, Walker is alleged to have robbed six banks.[3] Walker was again apprehended and appeared before this court on September 1, 1970. At that time he was again determined incompetent and ordered to the Federal Medical Center in Springfield, Missouri for further treatment. This was his third visit to that institution.

On May 11, 1971 Walker was ordered returned to this court for a hearing on his present competence, and on his right to be released from custody. On June 11, 1971 a motion was filed by Walker that he be discharged from custody and that the charges against him be dismissed. That motion is presently before the Court.

II

From the facts it should be apparent that Walker is mentally incompetent. Nearly every psychiatrist who has examined him at length has considered him

3. From December 1968 to the present, according to the files of the U. S. Attorney, Walker is alleged to have robbed sixteen banks in all.

psychotic and incompetent.[4] Dr. H. S. Fain of the Springfield Medical Center testified that Walker was "incompetent and in severe need of long-term treatment." The reports of the staff from Napa State Hospital, as well as the staff psychiatrist at the San Francisco jail reach the same conclusion. Dr. Diane McEwen, the staff psychiatrist at the jail who is presently treating the defendant, ably testified that he is in need of sophisticated in-patient psychiatric treatment in a mental hospital setting.

■ The conviction of an accused person while he is legally incompetent violates due process. Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The law demands that a defendant be mentally competent at the time of trial, so that he may appreciate the nature of the charges against him, as well as assist in his own defense. Thus, Walker constitutionally could not be brought to trial at this time or in the near future.

When one accused of a federal crime is found to be incompetent, he is assigned to the custody of the Attorney-General until he is found to be competent. 18 U.S.C. § 4246. Treatment is no provided for in the statute, and any therapy that is administered is purely for the purpose of raising the accused to a level of mental competence where he can stand trial.[5]

Since an accused committed under Section 4246 will not receive extended long-term treatment but will be confined in little more than preventive detention, the section raises serious questions of due process, particularly cruel and unusual punishment. For example a competent person accused of a crime certainly could not be detained for an extended period of time without the right to speedy trial and other due process guarantees. If read literally, however, Section 4246 permits long-term detention of a mentally deficient accused, *without treatment*, simply because he is incompetent. Such an interpretation would certainly face constitutional problems under Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

Because of these constitutional problems, courts have attempted to read a "rule of reason" into Section 4246. This rule states that commitment under this

4. The only psychiatric evidence pointing towards possible competency has been the staff reports from the Federal Medical Center in Springfield, Missouri. The court has chosen to disregard these reports for several reasons. First, Dr. H. S. Fain, a psychiatrist at the hospital, testified before this court that the hospital has only two full-time psychiatrists for 160 patients. Thus it is questionable if the staff reports merit much weight in light of the alternative evidence available. Second, Dr. H. S. Fain was the only psychiatrist at the hospital who did see Walker with some regularity, and he expressed the belief that Walker was incompetent and in severe need of long-term treatment. Finally, hospital policy favors a finding of competence in as many cases as possible, albeit for benevolent reasons. The hospital is divided into two sections, one for persons who have been convicted (or acquitted on grounds of insanity) and the other for those like Walker who are incompetent to stand trial. Dr. Fain testified that the patients in the former section receive far better treatment than those patients awaiting trial. (Since the patients in the former group are likely to be in the institution for a reasonably long time, the facilities and programs in that section are more elaborate and the treatment more intensive.) Dr. Fain testified that because this disparity exists, it has been hospital policy whenever possible to find people in the latter section competent to stand trial so that they would go to trial and then be eligible for the section with better treatment facilities.

5. Moreover, as Dr. Fain has testified, even when the accused does receive treatment under § 4246, it is likely to be poor or minimal. For example, the Medical Center at Springfield has only two full-time psychiatrists for those committed under § 4246, that group presently totalling 160. In Walker's case, according to Dr. Fain, the treatment clearly would be inadequate.

section is "temporary" and the accused cannot be held for an "unreasonable period of time." See Royal v. Settle, 192 F.Supp. 176 (W.D.Missouri 1959); United States v. Jackson, 306 F.Supp. 4 (N.D.Cal.1969).

Given this narrow interpretation, the statute may be constitutional. This court, however, need not address itself to that question, as Walker has been confined for significant lengths of time, the most recent being one year. This is no "temporary" commitment. Thus, even under the arguably constitutional interpretation of § 4246, it would be unlawful to confine Walker under that section any longer.

What, then can be done for Mr. Walker under the federal statutes, in terms of benefit to him and benefit to the community? As we have seen, he cannot be brought to trial nor can he be committed "temporarily" under § 4246. Ideally, Walker should be treated on a reasonably long-term basis in a mental hospital with adequate security against escape. The psychiatric testimony before this court indicates that such long-term treatment could improve Walker's condition to a point where he "could take care of himself" and function as a productive member of society. At present, however, the federal statutes do not provide for such treatment for the incompetent accused.[6]

■ Given that (1) Walker is incompetent to stand trial; (2) Walker can no longer be confined under 18 U.S.C. § 4246; and (3) the federal statutes contain no provision for long-term commit-

ment with treatment, the federal government has no right to confine Walker any further. Consequently, I am ordering his release from custody.

### III

In the present case, however, Walker is not the responsibility of the federal government alone. The State and local officials have a serious responsibility in this case, and the court is pained at the reluctance of these officials to recognize and to undertake this responsibility. Unlike the federal statutes, California does provide for long-term commitment with treatment for one accused of a crime. Cal.Pen.Code §§ 1370, 1372, 4011.6. For these involuntary commitment provisions to be triggered, however, the person must be charged with a violation of the State Penal Code. At present, the State and local officials have failed to charge Walker with a crime.

The Lanterman-Petris-Short Act, § 5000 et seq. of the California Welfare and Institutions Code, may provide some assistance. Chapter 2 permits, in some cases, short-term involuntary commitment with treatment, and the individual need not have been charged with a crime.[7] Until the enactment of AB 2654, a proposed amendment to § 5304, however, any involuntary commitment with treatment under this chapter will be no more than seventeen days (and probably no more than seventy-two hours).[8] Hence, chapter 2 may not be a viable alternative in this case.

6. Repeated proposals to amend Chapter 313 of Title 18 have been introduced to remedy this omission. These proposals have been strongly endorsed by the Judicial Conference of the United States. Such legislation, however, has not been passed as yet.

7. Cal. Welfare and Institutions Code §§ 5150, 5250.

8. The relevant portions of AB 2654, the proposed amendment to § 5304, would amend § 5304 to read as follows:

(a) If the court or jury finds that the person named in the petition for post-certification treatment has (a) threatened, attempted, or actually inflicted physical harm upon the person of another after having been taken into custody for evaluation and treatment, and, as a result of mental disorder, presents an imminent threat of substantial physical harm to others, (b) had attempted or inflicted physical harm upon the person of another, that act having resulted in his being taken into custody *or (c) would, but for the*

Chapter 3 of the Lanterman-Petris-Short Act may be more helpful. §§ 5350–5400 provide for treatment through a "conservatorship" for six month periods (or less if a doctor should so determine), upon a finding that the conservatee is a "gravely disabled person". Walker *may* be able to satisfy the requirements of chapter 3, but one has no guarantee that the hospital will have security facilities against escape. In light of Mr. Walker's previous escapes from Napa State Hospital the lack of security facilities becomes an important factor.

Any other state treatment must necessarily be voluntary, in which case the person is free to go any time he so desires. Given Walker's past experiences on the "voluntary treatment" basis, this alternative appears rather unattractive.

The State is in a position to protect the community from Mr. Walker, and it is imperative that the State be aware of the gravity of the situation. Consequently, in the hope that the State and local officials will act to make §§ 4011.6, 1370 and 1372 of the Penal Code applicable to Mr. Walker, this court is sending a copy of this order to the Attorney-General of the State of California, the San Francisco County District Attorney, the Alameda County District Attorney, the Chief of Police of San Francisco, California, and the Chief of Police of Oakland, California.

## IV

The case of Michael Walker is not unique; this district alone has entertained two recent cases that raise the same problems. In United States v. Jackson, 306 F.Supp. 4 (N.D.Cal.1969), Judge Zirpoli struggled with a dilemma similar to that facing this court and held that "a person suffering an illness cannot, consistent with the Constitution, be confined as a criminal without medical treatment." 306 F.Supp. at 6. In United States v. Cowart, CR–69–1 (N. D.Cal.), Judge Harris chose to commit an incompetent accused to a state hospi-

---

*intensive treatment received during the 14-day period, have threatened, attempted, or actually inflicted physical harm upon the person of another after having been taken into custody for evaluation and treatment,* and who, as a result of mental disorder, presents an imminent threat of substantial physical harm to others, the court shall remand him to the custody of the Department of Mental Hygiene or to a facility designated by the county of residence for a further period of intensive treatment not to exceed 90 days from the date of court judgment. Said person shall be released from involuntary treatment at the expiration of 90 days unless the superintendent or professional person in charge of the hospital in which he is confined files a new petition for post certification treatment on the grounds that he has, *or would have, but for treatment,* threatened, attempted, or actually inflicted physical harm to another during his period of postcertification treatment, and he is a person who, by reason of mental disorder, presents an imminent threat of substantial physical harm to others. Such new petition for postcertification treatment shall be filed in the superior court wherein the original petition for postcertification treatment was filed.

(b) *Whenever it is alleged that the person named in a petition for postcertification treatment would, but for his treatment, have threatened, attempted, or actually inflicted, physical harm upon the person of another, such allegation must be supported by the declarations of two professional persons. When the person named in the petition for postcertification treatment is in a private institution one of the professional persons certifying to the facts pursuant to this subsection shall not be employed by the institution.*

The relevant portion of SB 1003, a proposed amendment to § 5304, reads as follows:

*If the court finds that the person named in the petition for postcertification treatment has been subjected to intensive treatment and medication, and notwithstanding said treatment still presents an imminent threat of substantial physical harm to himself or others, said person shall be remanded for further treatment in the intensive treatment facility until released by order of the superior court having jurisdiction over the action.*

tal under Chapter 2 of the Lanterman-Petris-Short Act. In their opinions and memoranda Judge Zirpoli and Judge Harris expressed deep concern over the problems surrounding the incompetent accused, and both judges have been extremely active in attempting to eradicate these problems.[9]

Michael Walker is charged with committing acts that violate both state and federal law. In the present case the omission in the federal code can be compensated for if the state officials choose to act. In a situation where the state officials do not charge the individual, however, or where the act violates only the federal code, under the present statutory scheme the federal government cannot lawfully detain the accused for a significant period of time. In such a case the United States Constitution requires that the incompetent accused be released, at the risk of harm both to himself and to the community.

\* \* \*

It is the opinion and recommendation of this Court that Walker be committed for appropriate treatment in a suitable California mental institution with adequate security facilities.

Accordingly, it is hereby ordered that:

1. Copies of this MEMORANDUM AND ORDER be sent to the above-named state and local officials for appropriate action.

2. The United States Marshal forthwith deliver Mr. Walker to the custody of the Chief of Police for the City and County of San Francisco for such action, consistent with this MEMORANDUM AND ORDER, as he and the District Attorney deem appropriate.

9. Courts in other districts, of course, also have confronted this situation and have expressed dismay at the dilemma. Most notable has been Judge John Oliver of the

Western District of Missouri, a leader in the field of treatment for the incompetent accused.