STATE EX REL. ALVAREZ, Petitioner, v. LOTTER, Superintendent, Milwaukee County House of Correction, and another, Respondents.

Court of Appeals

*No. 78-386. Submitted on briefs May 23, 1979.—*
*Decided May 31, 1979.*
(Also reported in 283 N.W.2d 408.)

330

For petitioner the cause was submitted on the brief of *Richard L. Cates,* state public defender, and *Mel S. Johnson,* assistant state public defender.

For the respondents the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Pamela Magee-Heilprin,* assistant attorney general.

Before Decker, C.J., Cannon, P.J. and Moser, J.

PER CURIAM. Angel Alvarez seeks review of the denial by the Milwaukee County circuit court of his petition for a writ for habeas corpus in which he sought release from custody and dismissal of probation revocation proceedings pending against him.

Alvarez was convicted of burglary on April 1, 1977, in Milwaukee County circuit court. He was sentenced to imprisonment for a term of five years. The sentence was stayed and he was placed on probation for a period of three years. While on probation, Alvarez requested a permit to travel to Florida. His request was granted by the Department of Health and Social Services, hereinafter the department.

In early October of 1977, Alvarez was arrested in Wisconsin on a Florida warrant for alleged criminal activity in Florida. On October 10, 1977, the department placed a probation hold on Alvarez at the Milwaukee County Jail. On October 12, 1977, a preliminary probation revocation hearing was held at the jail. The preliminary hearing magistrate found probable cause that Alvarez had participated in two shootings in Florida by providing transportation to and from the scene of the crimes and by possessing two firearms in violation of his probation agreement and the Federal Firearms Control Act.

Alvarez demanded a final revocation hearing, in lieu of waiving his right to the hearing. The department ordered him "held in custody, with a detainer to follow him to Lee County Jail, Lee County, Florida." It was the intent of the department to make a decision regarding revocation after resolution of the Florida matters. Alvarez waived extradition to Florida. He arrived in Florida shortly after the preliminary revocation hearing.

The proceedings in Florida culminated with Alvarez' conviction of crimes in that state. As a result of the convictions, he was placed on probation by a Florida court and was sentenced to approximately 355 days imprison-

ment. Credited against this sentence was his pretrial incarceration, so only 51 days remained to be served upon his sentencing. Following his service of the 51 days, he was immediately returned to Wisconsin for a final revocation hearing. He arrived in Wisconsin on or about August 29, 1978.

Alvarez brought this petition for relief on September 6, 1978, prior to his final revocation hearing, alleging that he had been denied due process because the department had not afforded him a final revocation hearing while he was in Florida. Alvarez contended that he was denied his due process right to a hearing within a reasonable time after being taken into custody on a probation hold.

The circuit court concluded that the department acted reasonably in waiting until the Florida proceedings were resolved, and that the delay was not occasioned by any malfeasance on the part of the department, but by the fact that Alvarez was awaiting trial 1,500 miles away.

The United States Supreme Court has held that an element of the fair process due a parolee facing revocation is that the hearing must be tendered within a reasonable time after the parolee is taken into custody. *Morrissey v. Brewer,* 408 U.S. 471 (1972). The due process standards for parole revocation proceedings were made applicable to probation revocation proceedings in *Gagnon v. Scarpelli,* 411 U.S. 778 (1973), and therefore apply to Alvarez.

In *Moody v. Daggett,* 429 U.S. 79 (1976), the Supreme Court granted certiorari to decide whether a federal parolee imprisoned for a crime committed while on parole was constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant was issued and lodged with the institution where he was confined and serving intervening sentences, but was not served on

him. Moody had requested that the United States Board of Parole execute the warrant but his request had been denied. Moody had then instituted a habeas corpus action in the district court, seeking dismissal of the parole violator warrant on the ground that he had been denied a prompt hearing at which the parole revocation issues could be aired. The district court had dismissed the petition and the Court of Appeals for the Tenth Circuit had affirmed.

Before the Supreme Court, Moody claimed that he had protected liberty interests in both the length and conditions of his confinement which were violated by the failure of the board to air the revocation issue. The board contended that the mere issuance of the warrant worked no present deprivation of protected liberty sufficient to invoke due process protection.

The Supreme Court resolved the disputed contentions by holding that the issuance and lodging of the detainer did not require that Moody be given a prompt revocation hearing. In its rationale, the court emphasized that Moody suffered no present deprivation of protected liberty sufficient to invoke due process, because he was in custody not on the revocation warrant, but rather, on other convictions. The custody during the period between issuance of the warrant and petition for release was held not to be unlawful because it resulted from convictions of other crimes. *See* the dissenting opinion of Mr. Justice Stevens in *Moody,* 429 U.S. 78, 89; and *see* the concurring opinion of Circuit Judge Tone in *U.S. ex rel. Sims v. Sielaff,* 563 F.2d 821, 829 (1977).

Following the Supreme Court's decision in *Moody,* the Seventh Circuit Court of Appeals considered a petitioner's claim that he was denied due process because his revocation hearing was not held within a reasonable time after he was. taken into custody. The Seventh Circuit

noted that "the linchpin of the *Moody* rationale is that no process is due a parolee facing revocation until his life, liberty, or property interests are impaired by the revocation proceedings," *U.S. ex rel. Sims,* 563 F.2d 821, 826. The court held that because Sims, in contrast to Moody, was taken into custody and then imprisoned *solely* pursuant to the revocation proceedings, his due process rights had been activated. After holding that Sims' due process rights were activated under these facts, the court held that his due process claim must be judged by speedy trial standards suggested by *Barker v. Wingo,* 407 U.S. 514, 523 (1972). In so holding, the Seventh Circuit abrogated its prior rule that a dispositional delay of more than three months was so unfair that prejudice had to be presumed, with habeas release a virtually automatic result. *U.S. ex rel. Sims,* 563 F.2d 821, 827; *see also Bryant v. Grinner,* 563 F.2d 871 (1977).

Considering the instant case in light of *Moody* and *Sims,* our first inquiry must be whether Alvarez has demonstrated that his due process right to a prompt final revocation was triggered, requiring a hearing while he was imprisoned in Florida awaiting trial on Florida charges. The burden in a habeas corpus proceeding is on the petitioner to sustain his allegation that his detention is illegal by a preponderance of the evidence. *Walker v. Johnston,* 312 U.S. 275, 286 (1941).

On the record before us, the petitioner has not met his burden. Alvarez has not shown that his custody in Florida was a result of Wisconsin revocation proceedings, rather than a result of the Florida charges. Alvarez did not establish at the hearing on the petition that the Wisconsin detainer had any greater practical effect on his incarceration than the detainer in *Moody,* 429 U.S.

78. Alvarez failed to present facts from which it could be concluded that his loss of liberty in Florida was a result of pending revocation proceedings. The only custodial period which we can find, on this record, to be attributable to probation revocation proceedings is Alvarez' custody in Wisconsin from August 29, 1978 to September 6, 1978, the date of the habeas corpus hearing. These few days of custody are insufficient to prompt a *Barker v. Wingo* analysis.

Having concluded that Alvarez has not established that his life, liberty or property interests were impaired for any significant period by the revocation proceedings, the circuit court's order must stand.

*By the Court.*—Order affirmed.