STATE of Wisconsin, Plaintiff-Respondent,

v.

Dean ALLEN, Defendant-Appellant.†

Court of Appeals

*No. 93–0381–CR. Submitted on briefs July 27, 1993.—Decided August 31, 1993.*

(Also reported in 505 N.W.2d 801.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Richard J. Auerbach* of *Auerbach & Porter Law Firm* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Jerome S. Schmidt,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J. Dean Allen appeals a judgment of conviction and sentence imposed for first-degree intentional homicide. Allen argues that the ten-month delay between the time of his conviction and his sentencing violated his right to a speedy trial, guaranteed by the sixth amendment to the United States Constitution[1] and applicable to state criminal proceedings by virtue of the fourteenth amendment. Although we conclude that a defendant's right to a speedy trial encompasses the time from which the person is accused to the time of sentencing, we do not agree that Allen's right to speedy sentencing was violated. Therefore, we affirm.

In June 1991, a jury convicted Allen of first-degree intentional homicide, which carries a mandatory life sentence. Following the return of the verdict, a presentence investigation was ordered and Allen's sentencing was set for September 1991.

In August, the prosecution moved to adjourn the sentencing hearing. The prosecution based its motion on its desire to have the judge establish a minimum parole eligibility date. The trial judge had previously declined to do so in another case, believing that the lack

---

[1] The sixth amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

of standards and factors in the statute rendered it unconstitutional. Prosecutors wanted to delay sentencing until the Wisconsin Supreme Court decided two companion cases where the defendants were challenging the constitutionality of the same statute. The trial court granted the prosecution's motion over Allen's protest and despite his filing a demand for speedy sentencing.

The trial court adjourned Allen's sentencing once more before it ultimately sentenced Allen in May 1992, nearly ten months after the jury verdict was returned. Allen was sentenced to life in prison without eligibility for parole until the year 2025.

## THE RIGHT TO SPEEDY SENTENCING

■

Allen claims that the ten-month delay between the jury verdict and his sentencing violated his right to a speedy trial. Wisconsin courts have not previously addressed whether a defendant's speedy trial right extends through sentencing. We are persuaded by the holdings of other courts that have addressed the issue, and conclude that the speedy trial clause of the sixth amendment applies from the time an accused is arrested or criminally charged, *United States v. Marion*, 404 U.S. 307, 319-20 (1971), up through the sentencing phase of prosecution.

In *Pollard v. United States*, 352 U.S. 354, 361 (1957), the Supreme Court assumed "arguendo" that sentencing is a part of the trial for purposes of the sixth amendment speedy trial protection. Since that decision, "all other[ ] [circuits] which have addressed the issue have either treated the subject as established law or have perpetuated the Court's assumption in *Pol-*

*lard*[2] . . . . Moreover no federal court has held that sentencing is *not* within the protective ambit of the Sixth Amendment right to a speedy trial." *Perez v. Sullivan*, 793 F.2d 249, 253 (10th Cir. 1986) (emphasis in original). Although at least two state courts have held that sentencing is not within the ambit of the speedy trial right, *see, e.g., State v. Drake,* 259 N.W.2d 862, 866 (Iowa 1977), *overruled on other grounds by State v. Kaster,* 469 N.W.2d 671, 673 (Iowa 1991); and *State v. Johnson,* 363 So.2d 458, 461 (La. 1978), we are more persuaded by the federal and state court holdings that sentencing is a part of the trial for sixth amendment purposes. *See Gonzales v. State*, 582 P.2d 630, 633 (Alaska 1978); *Erbe v. State,* 350 A.2d 640, 651 (Md. 1976); *State v. Sterling*, 596 P.2d 1082, 1085 (Wash. App. 1979).

■

The right to a speedy sentence is part of the sixth amendment right to a speedy trial because, while somewhat diminished, many of the policy considerations do apply. Sentencing delays may cause undue and oppressive incarceration. Furthermore, delays potentially can create extreme anxiety for a convicted person waiting to learn how long he or she will be imprisoned. And while prolonged incarceration pending sentencing may be compensable by credit against time served, that remedy does little good to someone whose conviction is overturned on appeal. Witnesses necessary for retrial

---

[2] *See United States v. Sherwood*, 435 F.2d 867, 868 (10th Cir. 1970); *see also Burkett v. Cunningham*, 826 F.2d 1208, 1220 (3d Cir. 1987); *United States v. Campisi*, 583 F.2d 692, 694 (3d Cir. 1978); *United States v. Reese*, 568 F.2d 1246, 1253 (6th Cir. 1977); *United States v. Campbell*, 531 F.2d 1333, 1335 (5th Cir. 1976); *United States v. Tortorello*, 391 F.2d 587, 589 (2d Cir. 1968).

or in support of a defendant's plea for a lesser sentence may become unavailable. Also, as pointed out in *Gonzales*, "the public retains an interest in prompt and certain punishment for criminal offenses, both to minimize the possibility of criminal activity by the accused while released on bail pending sentence, and to aid the deterrent effect of penal sanctions." *Id.* at 633. While these reasons are not exhaustive, they illustrate the need to extend the right to a speedy trial through imposition of sentence.

■

The United States Supreme Court established a four-part balancing test to determine whether a criminal defendant has been denied his constitutional right to a speedy trial. In making its determination, the court should consider length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). These four factors are guidelines, not rigid tests, and no single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533.

■

Wisconsin adopted the *Barker* test for traditional speedy trial cases in *Day v. State*, 61 Wis. 2d 236, 212 N.W.2d 489 (1973). We join a number of other courts in applying the *Barker* test to postverdict cases as well.[3]

### APPLICATION OF THE *BARKER* TEST

The considerations for a delay in sentencing challenge obviously differ from those to a pretrial delay. As stated in *Perez:*

---

[3] *See supra*, note 2.

> The alteration of defendant's status from accused and presumed innocent to guilty and awaiting sentence is a significant change which must be taken into account in the balancing process. Once guilt has been established in the first instance the balance between the interests of the individual and those of society shift proportionately.

*Id.* at 254. With this in mind, after considering Allen's arguments within the *Barker* framework, we conclude that the delay in sentencing did not deny him the right to a speedy trial.

The first factor presents a threshold question: is the length of delay presumptively prejudicial? This question "must be answered in the affirmative before inquiry can be made into the remaining three factors." *Hatcher v. State,* 83 Wis. 2d 559, 566-67, 266 N.W.2d 320, 324 (1978). The complexity of the situation is to be considered in determining the length of delay needed to trigger the other factors. "[T]he delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker,* 407 U.S. at 531. Because we are dealing with a postconviction delay, we look at the complexity of the postconviction procedures. Although this trial may have been fairly complex, after conviction the sentencing procedure was a fairly simple one. Allen faced a mandatory life sentence, therefore the trial court did not have to consider the appropriateness of probation or any other lesser sentence. The only issue to be considered at sentence was whether to impose a minimum parole eligibility date. Although one might argue that the sentencing procedure was complex because the trial court had to decide the constitutionality of the minimum parole statute, because it did not make this

decision this element of complexity cannot be said to have added to the delay.

■

Furthermore, a ten-month delay between conviction and sentencing is generally too long. Although a ten-month delay is relatively short when compared to other speedy sentencing cases,[4] when combined with the fact that the length of the delay does not reflect the complexity of the matter, the ten-month delay is sufficient to provoke an inquiry into the other factors set out in *Barker*.

The next two factors, the reasons for the delay and Allen's assertion of his sixth amendment right, both weigh in favor of Allen. No one disputes that Allen asserted his sixth amendment right to speedy sentencing. Additionally, the reason for the delay is undisputed. The prosecution knew that the trial judge had declined to impose a minimum parole eligibility date in another homicide case because he was concerned the statute was invalid. The validity of the statute was going to be determined in a case pending in the Wisconsin Supreme Court, *State v. Borrell*, 167 Wis. 2d 749, 482 N.W.2d 883 (1992), and the prosecution wanted the sentence delayed until the decision in that case was rendered. Therefore, the prosecution moved for a continuance, and the trial court granted the motion.

---

[4]*See, e.g., Perez* (15 months enough to provoke other factors); *Juarez-Casares v. United States*, 496 F.2d 190 (5th Cir. 1974) (delay of 31 months; sentence vacated); *United States v. James*, 459 F.2d 443 (5th Cir. 1972) (approximate three-year delay unreasonable but no relief granted because no prejudice resulted).

When faced with a statute the trial court believes is unconstitutional, it should "make the call" and not wait for the issue to be resolved in a different case in an appellate court. If the trial court refused to proceed every time an issue was pending in an appellate court, our system could slow to a halt.

However, preconviction delay is not to be weighed heavily against the state if it was not intentional and not motivated by a desire to disadvantage the defendant in preparation of his or her defense. *Green v. State*, 75 Wis. 2d 631, 637, 250 N.W.2d 305, 308 (1977). Applying this to the postconviction delay here, while the state intended the delay, there is no indication that it was motivated by a desire to disadvantage Allen in any way. To the contrary, it appears as though the state was attempting to have the applicable statute applied in the proper manner.

Therefore, the state must bear the responsibility of the delay because, over Allen's objection, it sought and obtained a continuance. However, because the delay was not motivated by the desire to disadvantage Allen, this factor does not weigh heavily against it.

Next we turn to the issue of prejudice. While none of the factors are necessary in order to find a violation of the right to a speedy trial, we are reluctant to conclude there is a sixth amendment violation when there is no prejudice, especially in a postconviction case. We agree with *Perez*, which stated:

> In fact, it might be said that once a defendant has been convicted it would be the rarest of circumstances in which the right to a speedy trial could be

77

> infringed without a showing of prejudice. Moreover, the necessity of showing substantial prejudice would dominate the four-part balancing test.

*Id.* at 256. This is so because the traditional interests that the speedy trial guarantees are to protect diminish or disappear once there has been a conviction. With regard to postconviction interests, again *Perez* is on target:

> Because the rights of society proportionately increase, the prejudice claimed by the defendant must be substantial and demonstrable. We proceed to evaluate defendant's claims of prejudice, therefore, in the context of his status as a convicted felon, not as an accused person awaiting trial.

*Id.*

Allen's claim of prejudice is primarily focused on the comparative benefits of incarceration in a state prison over the Marathon County jail. Although we agree that the privileges afforded a prison inmate are important, with regard to Allen the prejudice is speculative both with regard to whether he would have qualified during the ten-month delay, and the extent in which he would have participated and benefitted from the privileges. Furthermore, any benefits he may have gained are not lost, he will have the opportunity to participate in these programs once in the state prison. These speculative allegations of prejudice do not amount to the "substantial and demonstrable" prejudice needed to support a postconviction violation.

Allen also briefly mentions prejudice in the form of the anxiety he suffered as a result of not knowing the length of time he would be in prison. Although a convic-

tion for a less serious crime may require a court to give more weight to this argument, because Allen was facing a mandatory life sentence we conclude that his argument is unpersuasive. Furthermore, there is nothing in the record to support Allen's contention that he suffered anxiety with respect to his sentencing delay. Finally, the anxiety suffered by one who has been convicted, in jail, and unquestionably going to serve a long sentence cannot be equated with the anxiety of an accused awaiting trial who is presumed innocent. Therefore, we conclude that Allen has not demonstrated prejudice by the delay in his sentencing.

The absence of prejudice outweighs the other factors in this case. This is especially so considering our conclusion that prejudice dominates the four-part balancing test in postconviction cases. While the ten months is generally too long to wait for sentencing, when it results in no prejudice it does not amount to a violation of the right to a speedy trial.

*By the Court.*—Judgment affirmed.